IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ATHRYN E. REEDJOSPEPH-
MINKINS,

    *Plaintiff,*

    v.

DC GOVERNMENT DEPT OF YOUTH
REHABILITATION SERVICES et al.
    *Defendants.*

Civil Action No. ELH-17-45

## MEMORANDUM OPINION

In this employment discrimination case, the self-represented plaintiff, Athryn E. Reedjoseph-Minkins, has sued her employer, the DC Government Department of Youth Rehabilitation Services (the "Department" or "DC DYRS"), two of her supervisors, Clinton Lacey and Linda Harlee Harper, and a human resources staff member, Arnita Evans. ECF 1. Plaintiff alleges that she suffered discrimination on the basis of her sex (female) and disability ("PTSD, Anxiety, Incontinence Issues [], Diabetic, [and] Depression"), as well as retaliation. *Id.* at 5. Suit is founded on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 to 12117. ECF 1 at 4.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants have moved to dismiss plaintiff's Complaint in its entirety, on the grounds that plaintiff's claims are untimely, unexhausted, and brought against improper parties. ECF 16. The motion is supported by a memorandum of law (ECF 16-1) (collectively, "Motion"). Defendants also submitted plaintiff's Charge of Discrimination, filed with the Maryland Commission on Human Rights ("MCHR"). ECF 16-2

("Charge"). Plaintiff opposes the Motion. ECF 23 ("Opposition"). Defendants replied. ECF 24 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual and Procedural Background[1]

### A.

Plaintiff works as a correctional officer for the Department. ECF 1-3 (Claim Narrative) at 1. She alleges that she is a disabled veteran. ECF 1 at 5. Further, plaintiff alleges that she suffers from incontinence, diabetes, Post-Traumatic Stress Disorder ("PTSD"), anxiety, and depression. *Id.*

The Complaint alleges that plaintiff began her employment with the District of Columbia government in 2004. ECF 1-3 at 1. At that time, she submitted a questionnaire to her employer stating that she suffered from PTSD, and also had physical disabilities stemming from unspecified injuries sustained while on active duty. *Id.*

Plaintiff's first assignment with the Department was to Oak Hill Youth Center, where she worked from 2004 to 2009. *Id.* According to plaintiff, while working there, she was consistently harassed and threatened, and was refused restroom breaks and lunch breaks for up to eight hours. *Id.* The inability to use the restroom often caused plaintiff to urinate or defecate on herself at work. *Id.* Plaintiff alleges that she filed a complaint with the "Maryland EEOC" in July 2012, but that the human resources staff worked to "discredit" her. *Id.* According to plaintiff, a human

---

[1] As discussed, *infra*, in view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). I am also mindful that plaintiff is *pro se*, and therefore I must construe her submissions liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

resources representative "stated that [plaintiff] did not need to file [a complaint] because it was going to be turned down." *Id.*

Plaintiff was subsequently transferred to another work location in Washington, DC, which required her to commute almost three hours each way. ECF 1-3 at 1. At this location, called "Youth Services Center," plaintiff was sexually harassed by a co-worker who, among other transgressions, "came up behind [her] and started humping [her] and saying that he was going to put his 'DICK' on [her] leg." *Id.* at 1-2. Plaintiff alleges that she informed a supervisor of the co-worker's behavior. *Id.* at 2. The supervisor "stated to file another complaint but to file with the DC EEOC." *Id.*

Thereafter, plaintiff was reassigned to a facility located in Maryland called "New Beginnings," where she was assigned to "the Midnight tour." *Id.* There, she claims that she continued to be harassed by her co-workers. *Id.* In particular, plaintiff alleges that during her shift her co-workers showed "[s]exually explicit movies depicting Gang Rapes". *Id.* Plaintiff allegedly filed another EEOC complaint in July 2014, and was assigned to a different shift. *Id.*

Apparently, plaintiff was involved in a motor vehicle accident in August 2014 while on the way to work. *Id.* In early 2015, she requested "light duty" pursuant to her doctor's recommendation. *Id.* Her request was allegedly denied, and plaintiff was told that "the Agency did not provide LIGHT DUTY." *Id.* However, plaintiff alleges that she later "noticed that several of [her] co-workers were allowed light duty positions." *Id.*

According to plaintiff, she continues to be harassed by her co-workers, and is still sometimes denied lunch and restroom breaks. *Id.* at 1. On her Complaint form, plaintiff alleges that she was "[n]ot allowed to use [the] restroom, . . . . [n]ot allowed lunch breaks . . . and [was]

held over for up to an hour and not paid overtime." ECF 1 at 7. And, she indicates that she was "refused medical treatment from workman's comp." *Id.* at 5.

Plaintiff also alleges that her "vehicle was scratched up" and that her request "to pull the camera footage for the time of the incident" was refused. ECF 1-3 at 2. It is unclear whether or how this allegation is related to plaintiff's other claims.

**B.**

Plaintiff filed suit on January 6, 2017. ECF 1. Her claims are detailed on a form complaint (ECF 1), as well as an attached letter narrating the claims. ECF 1-3. Additionally, plaintiff submitted voluminous unmarked exhibits, including emails between plaintiff and her co-workers and incident reports concerning events loosely related to her claims. These documents were not posted to ECF. *See* ECF 1-4 (Filed Separately Sheet). Plaintiff also submitted a "Right to Sue" letter from the EEOC, dated November 8, 2016. ECF 1-2. The letter and accompanying documentation relate to EEOC Charge No. 570-2014-01768. *Id.* at 1, 2, 6.

Plaintiff did not attach the Charge to her Complaint. However, a Charge completed by plaintiff and submitted by defendants with their Motion is labeled 570-2014-01768. ECF 16-2 at 2. That Charge was filed on March 25, 2015. *Id.*

Plaintiff alleges in her Complaint that she filed EEOC charges on "several different dates," including "9/01/2016" and "5/28/2016." However, she has provided no documentation of any submissions on these dates, and the Right to Sue letter she received corresponds only to the March 25, 2015 charge of discrimination. Therefore, I shall consider that EEOC complaint to be the predicate charge for purposes of administrative exhaustion.

The Charge discusses some, but not all, of the allegations in the Complaint. It indicates that the alleged discrimination occurred between October 1, 2013, and July 31, 2014. ECF 16-2 at 2. However, plaintiff also checked the box indicating a "continuing action." *Id.*

In the "particulars" section of the Charge, plaintiff stated, in relevant part, *id.* at 1-2:

> Beginning in October 2013, while assigned to the Washington DC location [of DC DYRS], I was told by SYDR[2] J. Chamberlain that I was not allowed to use the bathrooms at the New Beginnings location because I had been transferred. I was later told by SYDR S. Dowell, SYDR S. Johnson, and SYRD G. Johnson-Bye that I was not allowed to use the bathroom while on duty, which caused problems with my disability. Beginning in October 2013, I began to be sexually harassed by Demetrius Jackson. Mr. Jackson started asking me questions about my breasts and stated that he wanted to date me. He also offered me $300 for sex several times. I complained to James Lester (Deputy Superintendent), but nothing was done to resolve the matter. On December 25, 2013, I was forces [sic] to work a 17.5 hour shift without any breaks which caused problems with my disability. On January 12, 2014, Mr. Jackson came up behind me and stated "I am going to put my dick your leg [sic]." I reported this to Superintendent Willie Fulilove. I began to be harassed by C. Wilborne and T Matthews with threats of harm and intimidation. C. Wilborne told the male residents on B200 to tell PDS[3] that I was allowing them to feel my body and this was reported. On January 26, 2014, I was transferred back to the Laurel location. I continued to receive harassing phone calls to my home from D. Jackson with heavy breathing and laughing. Beginning in February 2014, William Raper, Arvin Webb, and Mr. Hasaan Shahid began to show movies with strong sexual content and gang rapes. I requested to have the movies turned off and complained to Julius Layton (Night Supervisor), Union VP Y Ward and Shop Steward R Miller to no avail. After I complained about the movies, I started being harassed by Tasha Williams, Melinda Simms and Jennifer Ratliff-Unit Manager whom [sic] stated that she wanted me to search the residents [sic] rooms while they were asleep at night which is against the Agency's Policy and Procedures.

It does not appear that plaintiff amended her Charge to add more dates or additional allegations.

## II.    Standards of Review

As noted, defendants have moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 16. However, defendants also seek to dismiss

---

[2] Plaintiff does not define the abbreviation.

[3] This abbreviation is not defined.

plaintiff's claims as unexhausted. ECF 16-1 at 16. If true, this would deprive the Court of subject matter jurisdiction. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013). Therefore, I shall construe the Motion as one under Fed. R. Civ. P. 12(b)(1), as well.

## A. Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A factual challenge can also assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Id*.

Defendants bring a factual challenge because they argue that plaintiff failed to exhaust her administrative remedies under Title VII and the ADA. ECF 5-1 at 8. Defendants argue that the failure to exhaust deprives the Court of subject matter jurisdiction as to these claims. *Id.*

In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru*

*v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (Citation omitted).

## B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (citation omitted). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, without converting a motion to dismiss to a motion for summary judgment, a court may properly consider documents expressly incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint by reference and authentic.'" *U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, ___ F.3d ___, 2018 WL 2435430, at *2 (4th Cir. May 31,

2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004). To be "integral" a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

As noted, plaintiff submitted an exhibit with the original Complaint. *See* ECF 1-2 (Notice of Right to Sue). And, defendants attached plaintiff's Charge to their Motion. ECF 16-2. Because these exhibits are integral to the Complaint, I may consider them without converting the Motion to one for summary judgment. *See, e.g.*, *Goines*, 822 F.3d at 166.

## III. Discussion

Defendants move to dismiss plaintiff's claims on several grounds. They assert that the claims are untimely, as none of the dated allegations in plaintiff's Charge are alleged to have occurred within the statutory 300 day period prior to the Charge's filing. ECF 16-1 at 6-10. Moreover, defendants contend that many allegations in plaintiff's Complaint are not reasonably related to the incidents described in the Charge, and are therefore unexhausted. *Id.* at 12-16. And, defendants further argue that, despite the volume of documents that plaintiff submitted with her Complaint, these do not provide enough substance to save her claims. *Id.* at 10-12.

Additionally, defendants seek the dismissal of all claims against Lacey, Harper, and Evans. *Id.* at 16. Furthermore, defendants argue that no statute provides for suit against DC DYRS, and it should therefore be dismissed. *Id.* at 17.

## A. Employment Discrimination Statutes

### 1. Title VII

Title VII prohibits an employer from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal–Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014). It also prohibits an employer from retaliating against an employee because the employee filed a grievance or complaint regarding an

employment practice that allegedly violated Title VII's antidiscrimination provision. *See* 42 U.S.C. § 2000e–3(a); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 415 (4th Cir. 2015).

In a retaliation case, the Fourth Circuit has said that, to establish a prima facie case of discrimination under Title VII, a plaintiff must show: "'(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto*, 786 F.3d at 281 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)); *see also Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).

An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC,* 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Single acts that may not be cognizable as adverse actions on their own may, over time, cumulatively amount to an unlawful employment practice when they amount to a hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Hoyle,* 650 F.3d at 333-34.

The Supreme Court has explained that the definition of "adverse employment action" in the context of a claim for retaliation is not limited to the definition as used in the context of a substantive discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*BNSF*"). Rather, "the adverse action component of Title VII's antiretaliation provision can be satisfied by showing that the employer took 'materially adverse' action in

response to an employee engaging in a protected activity, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Williams v. Prince William Cnty., Va.*, 645 F. App'x 243, 245 (4th Cir. 2016) (quoting *BNSF*, 548 U.S. at 68). Conduct as seemingly "trivial" as a "change in an employee's work schedule" or a "supervisor's refusal to invite an employee to lunch" may, under some circumstances, constitute adverse employment actions in the context of retaliation. *BNSF*, 548 U.S. at 69.

With respect to the causation element, plaintiff must show that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citation omitted). "A plaintiff who can show that retaliation 'was the real reason for the [adverse employment action],' . . . will necessarily be able 'to show that the harm would not have occurred in the absence of - that is, but for - the defendant's conduct' . . . ." *Id.* at 252 (citations omitted) (alteration in *Foster*).

## 2. ADA

The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2). The ADA contains five titles: Title I, Employment; Title II, Public Services; Title III Public Accommodations; Title IV, Telecommunications; and Title V, Miscellaneous Provisions.

Plaintiff does not specify the Title under which she brings her claims. Based on my review of the Amended Complaint, however, it appears that Title I and Title II are the most relevant to this case.

Title I prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'"). A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Unlawful discrimination under Title I of the ADA "can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee. . . .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting § 12112(b)(5)(A)). Moreover, "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability" may qualify as "discrimination against a qualified individual on the basis of disability." 42 U.S.C. § 12112(b)(5)(B).

Title II of the ADA prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," 42 U.S.C. § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." *Id.* § 12132. Under Title II, a "qualified individual with a disability" is defined as an individual with a disability "who, with or without

reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2); *see also Seremeth v. Bd. of Cty. Comm'rs of Frederick Cty.*, 673 F.3d 333, 338 (4th Cir. 2012).

I infer that the claims here are lodged under Title I of the ADA, concerning employment, because the allegations of the Complaint and the Charge pertain to hardships suffered in the context of plaintiff's job, rather than services available to the public. *See* ECF 1-3; ECF 16-2.

### B. Individual Defendants

As a threshold matter, defendants move to dismiss all of plaintiff's claims against the individual defendants, Clinton Lacey, Linda Harlee Harper, and Arnita Evans. ECF 16-1 at 16. In support, defendants assert that plaintiff has pleaded no allegations against either Lacey or Harper. *Id.* This is accurate. Moreover, neither Title VII nor the ADA provides for actions against individual defendants. *See Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) ("Title VII [and] the ADA . . . do not provide for causes of action against defendants in their individual capacities."); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (noting that "Title VII does not provide a remedy against individual defendants who do not qualify as 'employers'" and extending that holding to the ADA). Therefore, claims against all three individual defendants shall be dismissed.

### C. The Department as Defendant

Defendants seek to dismiss all claims against the Department on the basis that, because it is "an agency of the District of Columbia government, DC DYRS may neither sue nor be sued in the absence of a statutory provision permitting it." ECF 16-1 at 17. Instead, defendants assert

that the District of Columbia, rather than the Department, is the proper party.  ECF 24 at 4.  They cite *Crockett v. Mayor of D.C.*, 279 F. Supp. 3d 100, 2017 WL 4286184 (D.D.C. 2017), for the proposition that "'subordinate agencies within the District of Columbia government are not subject to suit, unless' such an action is 'specifically [provided for] by statute.'"  *Id.* at *10 (citation omitted).

However, in the next paragraph of that case, Judge Randolph Moss noted, *id.* (quoting *Cooper v. Henderson*, 174 F. Supp. 3d 193, 200 (D.D.C. 2016)): "'Where a plaintiff, through unknowing mistake, names an improper defendant in her complaint, many courts in this district have *sua sponte* ordered substitution of the proper defendant.'"  Judge Moss therefore concluded, *id.*: "Because[the plaintiff] is proceeding pro se, because designation of the proper party defendants does not affect the substance of his claims, and because the District [of Columbia] would not be unfairly prejudiced by substitution, the Court concludes substitution is the proper course here."

I shall follow Judge Moss's example.  The Court will order the substitution of the District of Columbia for DC DYRS as a defendant in this action.

### D.  Exhaustion and Timeliness

### 1.

Under Title VII, a plaintiff must file a charge with the EEOC before filing suit in a federal court.  42 U.S.C. § 2000e-5(f)(1); *see Calvert Grp.*, 551 F.3d at 300.  And, Title I of the ADA "incorporates [Title VII's] enforcement procedures . . . including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court."  *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (internal citations omitted).

The regulation regarding the contents of a charge filed with the EEOC, 29 C.F.R. § 1601.12, indicates that any charge should contain, *inter alia*, the "full name, address and telephone number of the person making the charge," the "full name and address of the person against whom the charge is made, if known," and a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." *Id.* § 1601.12(a); *see also Mekonnen v. AIMCO Properties, L.P.*, PWG-12-1304, 2013 WL 588976, at *3 (D. Md. Feb. 13, 2013). Further, the regulation clarifies that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). After filing, a charge may be amended to clarify or amplify any allegations. *Id.*

This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see also Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 670 (4th Cir. 2015) ("We recognize that a primary objective of exhaustion requirements is to put parties on notice of the allegations against them."). Notably, the exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, the requirement "'reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Balas*, 711 F.3d at 407 (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th

Cir. 2000)). "Allowing [the EEOC] first crack at these cases respects Congress's intent . . . ." *Sydnor*, 681 F.3d at 593.

An aggrieved person must file a complaint with the EEOC within 180 days of the alleged discrimination, except in a "deferral" jurisdiction, where the period is 300 days. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117(a) (ADA); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Maryland is a deferral state. *See, e.g.*, *Dewitt v. Clean Harbors Envtl. Servs., Inc.*, RDB-16-1705, 2017 WL 3116609, at *3 (D. Md. July 21, 2017).

The exhaustion requirements of Title VII and the ADA also function as a jurisdictional bar in federal court, where plaintiffs have failed to comply with it. *See Balas*, 711 F.3d at 406. Failure to comply generally mandates dismissal of a suit. *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)).

Even when a plaintiff has filed a claim with the EEOC, a court cannot consider matters that were not properly raised during the EEOC process. To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look *only* to the charge filed with that agency." *Balas*, 711 F.3d at 408 (emphasis added); *see also Chacko*, 429 F.3d at 506 ("This charge frames the scope of future litigation."); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."). Although courts "recognize that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). Rather, courts are constrained by the

four corners of the charge and the inference of "'any charges that would naturally have arisen from an investigation thereof.'" *Id.* at 407-08 (citations omitted).

However, "[t]he touchstone for exhaustion is whether plaintiff's administrative and judicial claims are 'reasonably related,' not precisely the same." *Sydnor*, 681 F.3d at 595. The Court explained in *Sydnor*, *id.* at 594: "[A]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow. Instead, so long as a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, she may advance such claims in her subsequent civil suit." *Accord Southpeak Interactive Corp. of Del.*, 777 F.3d at 669; *Calvert Group, Ltd.*, 551 F.3d at 300; *Evans*, 80 F.3d at 963.

**2.**

Plaintiff filed her Charge with the Maryland Commission on Civil Rights on March 25, 2015. ECF 16-2 at 2. It was cross-filed with the EEOC. *Id.* Plaintiff checked the boxes on her Charge indicating that she had been discriminated against on the basis of sex and disability, and that she had suffered retaliation. *Id.* These are the same basic claims she alleges in her Complaint. *See* ECF 1; ECF 1-3.

Defendants assert that all of plaintiff's claims are untimely. They point out that a plaintiff must present claims of discrimination to the EEOC or an equivalent body within 300 days of an incident. ECF 16-1 at 6-7. Because plaintiff filed her Charge on March 25, 2015, any alleged discriminatory act must have occurred or continued after May 29, 2014, 300 days before March 25, 2015. *Id.* at 7. However, none of the events described in plaintiff's Charge are clearly alleged to have occurred on or after May 29, 2014. *See* ECF 16-2. Rather, the last date mentioned in the particulars section of the Charge is "February 2014," when plaintiff's co-

workers are alleged to have begun showing sexually explicit movies. *See id.* at 2. As a result, defendants maintain that none of plaintiff's claims is properly exhausted. ECF 16-1 at 8.

In her Opposition, plaintiff does not address defendants' legal arguments. Rather, plaintiff restates many of the allegations in her Complaint, and asks the Court not to dismiss her claims on the basis of her lack of experience with the law. ECF 23 at 5.

To be sure, plaintiff did not identify in her Charge any events occurring after May 29, 2014. However, the Charge states that the discrimination took place between October 1, 2013, and July 31, 2014. ECF 16-2 at 2. And, plaintiff checked the box indicating that the alleged violation was a "continuing action." *Id.* Therefore, I must consider whether plaintiff's claims have been exhausted under the continuing violation doctrine.

The Supreme Court adopted the continuing violation doctrine in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In *Morgan*, plaintiff sued Amtrak under Title VII, alleging that he had been subjected to various discrete discriminatory and retaliatory acts, and had additionally experienced a racially hostile work environment throughout his employment. 536 U.S. at 104. Plaintiff filed a charge with the EEOC alleging that he was "'consistently harassed and disciplined more harshly than other employees on account of his race.'[]" *Id.* at 105. However, many of the alleged discriminatory events that plaintiff complained of took place outside of Title VII's 300-day time for filing a charge with the EEOC. *Id* at 106. Amtrak filed a motion for summary judgment as to all of the events that took place outside of the filing period, which the district court granted. *Id.*

The Ninth Circuit reversed, applying the continuing violation doctrine. *Id.* at 106-07. That court determined that a plaintiff may sue on claims that were filed with the EEOC outside of the period established by Title VII if the claims were part of a series of related acts; some of

the acts took place within the limitations period; and the plaintiff shows that there is a systematic policy or practice of discrimination, part of which operated within the limitations period. *Id.* at 107. The Ninth Circuit determined that each of plaintiff's three Title VII claims (i.e., discrimination, hostile work environment, and retaliation) was sufficiently related to the post-limitations conduct to establish a continuing violation. *Id.* at 107-08.

The Supreme Court reversed the Ninth Circuit, in part. With respect to plaintiff's claims for discrete discriminatory and retaliatory acts, the Court stated that a party "must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110. The Court explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. And, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* The Court went on to define actions that qualify as discrete, stating, *id.* at 114:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Morgan can only file a charge to cover discrete acts that "occurred" within the appropriate time period.[]

However, the Court affirmed the Ninth Circuit as to plaintiff's claim for hostile work environment. 536 U.S. at 115. The Court observed that, unlike discrete acts, hostile work environment claims occur "over a series of days or perhaps years . . . ." *Id.* And, the Court said that, with respect to hostile work environment claims, "a single act of harassment may not be actionable on its own." *Id.* Thus, for hostile work environment claims, the Supreme Court concluded, *id.* at 117: "It does not matter, for purposes of [Title VII], that some of the component acts of the hostile work environment fall outside the statutory time period." The Court continued, *id.*: "Provided that an act contributing to the claim occurs within the filing period, the

entire time period of the hostile environment may be considered by a court for the purposes of determining liability.[l]"

The *Morgan* Court also provided guidance as to the kind of conduct that creates a hostile work environment.  In general, Title VII is violated on the basis of a hostile work environment where "'the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' . . . ." *Id.* at 116 (quoting *Harris*, 510 U.S. at 21).  Factors include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Morgan*, 536 U.S. at 116 (quoting *Harris*, 510 U.S. at 23).

In *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 221 (4th Cir. 2016), the Fourth Circuit articulated the requirements to prevail on a claim of hostile work environment:

> "[A] plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'"

(Quoting *Okoli v. Cty. of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)); *Accord Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc); *Chadha v. Northrop Grumman Sys. Corp.*, RDB-16-1087, 2017 WL 3226861, at *3 (D. Md. July 31, 2017).

The Fourth Circuit has also "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008); *accord Strothers v. City of Laurel, Md.*, 118 F. Supp. 3d 852, 864 (D. Md. 2015).  In *Sunbelt Rentals*, the Court said, 521 F.3d at 315-16 (alterations in *Sunbelt Rentals*):

Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," *Baqir v. Principi,* 434 F.3d 733, 747 (4th Cir. 2006), "callous behavior by [one's] superiors," *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [one's] supervisor," *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 276 (4th Cir. 2000), are not actionable under Title VII.

Here, plaintiff describes a work environment that could plausibly be considered to be hostile, although she does not explicitly allege a hostile work environment. *See* ECF 16-2 at 2 ("I began to be harassed by C. Wilborne and T Matthews with threats of harm and intimidation."); *id.* ("I continued to receive harassing phone calls to my home . . . ."). However, even if plaintiff could clear the "high bar" of the severe or pervasive test, none of the ongoing harassment she describes can be definitively placed during the 300-day period preceding the filing of her Charge. Nor has plaintiff indicated in any of her other filings that any of the undated incidents alleged in her Charge—the showing of sexually explicit movies and the demand that plaintiff search residents' rooms at night—occurred during the 300-day window. *See* ECF 1-3 at 2; ECF 24 at 4-5.[4]

Plaintiff alleges, ECF 1-3 at 2: "Once I filed my complaint in July 21, 2014 with the EEOC I was placed on the AM tour 6:30am-3:00pm at New Beginnings." This allegation would fall within the 300-day window prior to the filing of plaintiff's Charge, but plaintiff does not discuss this incident in her Charge, nor does she allege that her placement on a different shift was causally related to any protected activity. Furthermore, transfer to a new shift does not

---

[4] Moreover, even if the alleged incident in which plaintiff was asked to improperly search residents' rooms at night fell within the 300-day statutory period, plaintiff does not allege this or any related incident in her Complaint.

necessarily constitute an adverse employment action. *See Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575, 587 (D. Md. 2002).

Plaintiff also appears to claim that she was retaliated against following the filing of the instant Charge. *See* ECF 1 at 5; ECF 1-3 at 2. A claim of retaliation for filing an EEOC charge may be raised for the first time in federal court and need not be administratively exhausted. *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *Breck v. Maryland State Police*, TDC-16-2075, 2017 WL 2438767, at *4 (D. Md. June 5, 2017). However, there is no factual allegation in plaintiff's Complaint that supports a plausible claim of retaliation on this basis. Plaintiff does not allege any retaliatory action by defendants following the filing of her Charge in March 2015.

I am mindful that plaintiff is *pro se*, and that her filings must therefore be construed with the utmost liberality. *Erickson*, 551 U.S. at 94; *Balas*, 711 F.3d at 408. "Still, the Court is not an advocate for a *pro se* litigant, and the Court cannot assume, or invent, facts outside the record in order to patch together a viable claim for a *pro se* plaintiff." *Zaman v. Cmty. Coll. of Baltimore Cty.*, JKB-17-3584, 2018 WL 1811520, at *2 (D. Md. Apr. 17, 2018). Because it is not evident that any of the incidents plaintiff alleged occurred within the 300-day period prior to the filing of her Charge, I cannot conclude that her claims are timely and properly exhausted. As a result, all of plaintiff's claims of discrimination on the basis of disability and sex, as well as any claims of retaliation, are subject to dismissal, without prejudice, for lack of subject matter jurisdiction.

If plaintiff can allege facts support a claim of retaliation following the filing of her Charge, she may amend her Complaint by July 9, 2018.

### IV.    Conclusion

For the reasons stated, I shall GRANT the Motion, without prejudice. An Order follows, consistent with this Memorandum Opinion.

Date:  June 20, 2018                              _____/s/_____
                                                  Ellen Lipton Hollander
                                                  United States District Judge